RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0222p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

PATTI OKUNO,

> *Plaintiff-Appellant,*

*v.*

> No. 15-4043

RELIANCE STANDARD LIFE INSURANCE COMPANY,

> *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:14-cv-00662—Gregory L. Frost, District Judge.

Argued:  April 21, 2016

Decided and Filed:  September 7, 2016

Before:  DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Tony C. Merry, LAW OFFICES OF TONY C. MERRY, LLC, Worthington, Ohio, for Appellant.  Edna S. Kersting, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, Chicago, Illinois, for Appellee.  **ON BRIEF:**  Tony C. Merry, LAW OFFICES OF TONY C. MERRY, LLC, Worthington, Ohio, for Appellant.  Edna S. Kersting, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP, Chicago, Illinois, for Appellee.

─────────────────

## OPINION

─────────────────

    JANE B. STRANCH, Circuit Judge.  Patti Okuno's petition for long-term disability benefits was denied by Reliance Standard Life Insurance Company on the basis that depression and anxiety contributed to Okuno's disabling conditions.  After exhausting her administrative

1

appeals, Okuno brought a claim pursuant to the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1132(a)(1)(B). The district court found in favor of Reliance on cross motions for judgment on the administrative record. On appeal, Okuno asserts that the district court erred by adopting Reliance's improper interpretation of the plan's limitation on coverage for disabilities "caused by or contributed to by" mental or nervous disorders. Because her physical ailments, including Crohn's disease, narcolepsy, and Sjogren's syndrome, are disabling when considered apart from any mental component, Okuno contends that she is entitled to recover long-term benefits. Based on the reasoning set forth below, we REVERSE the order of the district court and REMAND the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Okuno had been working as an art director, a senior management position, with clothing company The Limited for seven months when she developed a range of symptoms including vertigo, extreme headaches, memory loss, and abdominal pain. R. 13-9, PageID 309; R. 13-11, PageID 546. Though she had previously been diagnosed with fibromyalgia and degenerative disc disease, Okuno contends that these maladies had been "stable and well-controlled" for years and did not prevent her from working. R. 13-11, PageID 551; R. 13-14, PageID 923.

After visits to multiple specialists, numerous tests, and two visits to the emergency room, Okuno was eventually diagnosed with narcolepsy, R. 13-14, PageID 923, Crohn's disease, R. 13-13, PageID 837, and Sjogren's syndrome, an autoimmune disease, R. 13-15; PageID 1049-50. Even after diagnosis, however, she continued to struggle with her symptoms, negative drug interactions, and the side effects associated with her many treatments. R. 13-15, PageID 1050. Unable to continue working, Okuno went on short-term disability and, when these benefits were exhausted, she applied through The Limited's long-term disability plan (the Plan) issued and administrated by Reliance.[1] R. 13-9, PageID 243-44; 296-97.

The Plan's Insuring Clause provides a monthly benefit for insured employees who: (1) are "Totally Disabled as the result of a Sickness or Injury covered by this Policy;" (2) are

---

[1]Okuno applied for long-term benefits through Reliance's subsidiary Matrix Absence Management. R. 13-9, PageID 243-244. Both are referred to as "Reliance" for ease of reference.

"under the regular care of a Physician;" (3) "completed the Elimination Period;" and (4) "submit[ted] satisfactory proof of Total Disability to [Reliance]," as Reliance also serves as the claims review fiduciary.  R. 13-1, PageID 90.

> The Plan defines "Totally Disabled" in the following terms:
>
> (1) during the Elimination Period and for the first 12 months for which a Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation; . . . [and]
>
> (2) after a Benefit has been paid for 12 months, an Insured cannot perform the material duties of any occupation.  Any occupation is one that the Insured's education, training or experience will reasonably allow.  We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

*Id*. at 81-82.

> The Plan's "Mental or Nervous Disorders" Limitation, which includes "depressive disorders," and "anxiety disorders," provides that:
>
> Monthly Benefits for Total Disability caused by or *contributed to by* mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twelve (12) months unless the Insured is in a Hospital or Institution at the end of the twelve (12) month period.  The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits.

*Id*. at 94 (emphasis added).  The Plan also contains a "Pre-Existing Conditions" Limitation, which restricts benefits for a total disability that is "caused by," "contributed to by," or "resulting from" a pre-existing condition, defined as "any Sickness or Injury for which the Insured received medical treatment, consultation, care or services" during the "pre-existing period" of twelve months prior to the effective date of insurance.  *Id*. at 81; R. 13-9, PageID 262.

Okuno's application for long-term disability benefits was initially denied.  R. 13-9, PageID 261-63.  A series of three appeals followed over the course of the next 25 months.

1.  <u>First Appeal: The Pre-Existing Condition Limitation</u>

The first denial, which Reliance communicated by letter on May 18, 2012, was based on the Pre-Existing Condition Limitation.  R. 13-9, PageID 261-63.  Reliance determined that Okuno's current disabling diagnosis was fibromyalgia and, because she had received treatment for it during the year prior to joining the Plan, she was not entitled to long-term disability benefits.  *Id*. at 262-63.

Okuno appealed this determination on August 13, 2012.  R. 13-14, PageID 874-75.  She clarified that the medical evidence provided with her first application reflected that she was disabled "due to a constellation of problems separate and distinct from fibromyalgia."  *Id*. at 874.  Okuno offered additional evidence, including four letters from her doctors and new medical records that, she alleged, showed her disabling conditions to be Crohn's disease, narcolepsy, and fibromuscular dysplasia.[2]  *Id*. at 878-921, 922-29, 931.

Reliance requested further information and reconsidered Okuno's application with the aid of an independent physician review.  R. 13-9, PageID 268.  On November 16, 2012, Reliance determined that its "original decision was appropriate in regards [to Okuno's] pre-existing conditions" and upheld its decision to deny her application.  *Id*. at 270.

The denial was based largely on the medical opinion of Dr. Lucien J. Parillo, an independent physician "Board Certified in Internal Medicine, Internal Medicine/Sports Medicine and Preventative Medicine/Occupational Medicine," who formed his conclusions based on a review of Okuno's file and did not conduct a physical examination.  *Id*. at 272.  Dr. Parillo noted that Okuno had been treated for issues relating to her fibromyalgia and cervical and lumbar pain during the pre-existing period.  He concluded that Okuno's Crohn's disease, narcolepsy, and fibromuscular dysplasia were "not considered impairing conditions as of 01/23/2012" as there was "no clinical documentation provided that substantiates that claim that these [new] conditions are physically impairing to the point of requiring restrictions, limitations, or absence from work."  *Id*. at 273.  However, because this was "not the original reason that her claim was denied,"

---

[2]The administrative record includes discussions of Okuno's initial diagnosis of fibromuscular dysplasia. However, her treating physicians later rejected this diagnosis.

Reliance informed Okuno that she could request a review of this determination "*solely* on the issue of whether these newly mentioned conditions are impairing." *Id*. at 273-74.

    2. Second and Third Appeals: The Mental or Nervous Disorders Limitation

Okuno submitted her second appeal on May 7, 2013, R. 13-15, PageID 1047-49, and supplemented it on June 5, 2013, *id*. at 1069. The appeal included a letter from Dr. Daniel Jones, Okuno's neurologist, who had cared for Okuno since she sought treatment for severe daytime fatigue a year before and who had diagnosed her with narcolepsy. *Id*. at 1050. Dr. Jones explained that her condition was complicated by hypertension, a rare side-effect of Xyrem, "the drug of choice for narcolepsy." *Id*. He had prescribed an additional drug, Trazodone, to increase her depth of sleep, but this caused "morning hangover and sleep paralysis." *Id*. Finally, Dr. Jones noted that Okuno had been diagnosed with Sjogren's syndrome, an autoimmune disease that often accompanies other immune system disorders. This combination resulted in "a battle of fatigue from medication, potential interaction with other medication interventions, disruption of sleep from many symptoms (back pain, anxiety, etc.) and a general sense of loss of vitality." *Id*. For these reasons, Dr. Jones concluded, Okuno's "disability is more than explained by her work-up." *Id*.

Reliance did not respond to either Okuno's second appeal or her two subsequent inquiries, which she submitted on September 9, *id*. at 1077, and September 19, 2013, *id*. at 1078, regarding the status of her application. On October 2, 2013, after the Plan's 60-day moratorium on legal action had elapsed, R. 13-1, PageID 87, Okuno filed a complaint against Reliance in the Southern District of Ohio. *See* 29 C.F.R. § 2560.503-1(i)(1)(i) (requiring that plan administrators provide notification of a benefit determination on review no later than 60 days after receipt of claimant's request).

On October 18, 2013, Reliance finally responded to Okuno's second appeal, reversing its original decision in part and affirming in part. R. 13-9, PageID 276-80. Upon reconsideration, Reliance determined that Okuno was impaired due to "depression and anxiety," and approved her claim for benefits for a twelve-month period under the Plan's Mental or Nervous Disorders Limitation. *Id*. at 279.

However, Reliance affirmed its prior determination that Okuno was "not Totally Disabled" due to her Crohn's disease, narcolepsy, or Sjogren's syndrome. *Id*. at 276, 279. Reliance found that Okuno "retained the functional abilities to perform the material duties of her occupation as an Art Director," *id*. at 276, as its Vocational Department had classified her occupation as "sedentary in nature," *id*. at n.2. In support of this conclusion, Reliance offered the opinion of Dr. Monroe Karetzky, a physician Board Certified in Internal Medicine, who conducted an independent review. *Id*. at 278. Like Dr. Parillo, Dr. Karetzky did not perform an in-person examination and limited his review to Okuno's medical records. Dr. Karetzky opined that Okuno was impaired due to her pre-existing "pain syndrome" and "major depression and anxiety disorders," but not impaired by Crohn's disease. *Id*. In fact, he disputed this diagnosis altogether and suggested that her symptoms were likely due to an infection for which she had recently been treated. *Id*. Dr. Karetzky further opined that Okuno's medical records did not support the diagnosis of narcolepsy. *Id*. The denial did not report any finding by Dr. Karetzky regarding Sjogren's syndrome.

Because this determination constituted a new decision as to Okuno's mental health, she was afforded the opportunity to appeal on this issue exclusively. *Id*. at 279. Okuno dismissed her complaint in the district court without prejudice on November 13, 2013, in order to exhaust the administrative process.

Okuno filed a third and final appeal on March 14, 2014, R. 13-15, PageID 1114-15, along with a supplement shortly after, *id*. at 1120-23. Despite Reliance's previous instruction that the right to appeal was limited to the most recent findings regarding Okuno's depression and anxiety, the third appeal challenged Dr. Karetzky's opinion and repeated the claim that Okuno was disabled due to her new conditions. *Id*. at 1115.

Reliance denied the third appeal in letters dated June 10 and June 12, 2014. R. 13-9, PageID 287-88, 289-93. The June 10 letter explained that Reliance's internal guidelines provided only one opportunity to appeal the denial based on Dr. Karetzky's finding that Okuno was not disabled by Crohn's disease or narcolepsy, and that the October 2013 letter constituted a final determination on the matter. *Id*. at 287-88. The June 12 letter considered Okuno's appeal only as it pertained to the Mental or Nervous Disorders Limitation. *Id*. at 290. Reliance

obtained an additional review by an "Internal Medical Specialist," Mary Kay Walder, RN, who was not involved with Okuno's previous appeals. *Id.* at 290-92. Once again, no in-person examination was conducted. Walder's paragraph-long review noted that Okuno received "treatment for a significant psychiatric clinical component of depression and anxiety." R. 13-4, PageID 182. The denial letter reported that Walder had also reviewed Dr. Karetzky's findings and his conclusion that "Ms. Okuno could return to work absent her depression and anxiety disorders," but offered no independent opinion on her new physical conditions. R. 13-9, PageID 292.

> On this basis, Reliance made its final conclusion:

> Therefore, we have determined that the October 18, 2013 determination, identifying the presence of a psychiatric clinical component since the January 23, 2012 date of loss, was appropriate. As Ms. Okuno's records continue to support the *continued presence of a psychiatric component*, we have determined that the decision to pay benefits to Ms. Okuno under the Mental or Nervous Disorders provision from February 22, 2012 through February 23, 2013 was also appropriate.

*Id.* (emphasis added).

In this denial letter, Reliance suggested that Okuno may not have met the eligibility requirements for benefits, or even have been disabled, on the sole basis that it had discovered a company registered under her name and home address, Chizuko Design LLC, that had been listed as "Active" since 2009. *Id.* Because Okuno had already been paid the benefits, however, Reliance indicated that it would "not be requesting repayment." *Id.*

Having exhausted the administrative appeal process, Okuno filed the current lawsuit on June 30, 2014, alleging that she was wrongfully denied long-term disability benefits under the terms of the Plan. R. 1. Both parties filed motions for judgment on the administrative record on March 20, 2015. R. 12, R. 13. The district court granted Reliance's motion and Okuno appealed. R. 16.

## II. ANALYSIS

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans . . . and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks omitted). Section 502(a)(1)(B) of ERISA allows a plan participant or beneficiary to bring a cause of action in federal district court to recover benefits due pursuant to the plan. 29 U.S.C. § 1132(a)(1)(B).

This court reviews de novo the district court's disposition of an ERISA disability benefit action based on an administrative record. *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). Where, as here, the benefit plan grants an administrator discretionary authority to interpret the terms and determine eligibility, R. 13-1, PageID 86, the court applies the arbitrary and capricious standard to the administrator's decision. *Firestone Tire*, 489 U.S. at 115; *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). We will uphold an administrator's denial where the determination resulted from "a deliberate, principled reasoning process" and was "supported by substantial evidence." *See Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

While this standard is not a "demanding form of judicial review of administrative action," *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010), neither is it to be a "rubber stamp" of the determination of the administrator, *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172-73 (6th Cir. 2003). Because a "deferential review is not *no* review," a denial of benefits will not be upheld where there is an "absence of reasoning in the record." *Id.* (internal quotation marks omitted). Moreover, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest," such as when the administrator both determines eligibility and pays out benefits, "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115 (alterations and internal quotation marks omitted).

Finally, the court's review is limited to the administrative record. *Schwalm*, 626 F.3d at 308. Therefore, we may consider only the evidence presented to the plan administrator as it determined the employee's eligibility under the terms of the benefit plan. *Id.*; s*ee also Jones v.*

*Metro. Life Ins. Co.*, 385 F.3d 654, 660 (6th Cir. 2004) ("[W]hen reviewing an administrator's denial of benefits pursuant to an ERISA plan, both the district court and this court may typically review only evidence contained in the administrative record.").

### A. The Mental or Nervous Disorders Limitation

Okuno contends that Reliance erred in two ways in applying the Mental or Nervous Disorders Limitation. First, she argues that Reliance failed to differentiate between a "mood disorder due to a medical condition" and a "primary mental disorder," as characterized in the American Psychiatry Association's Diagnostic and Statistical Manual of Mental Disorders from 1999. The Plan's terms, however, do not make this distinction nor does the record provide other support for the contention that the Manual somehow modifies the plain language of those terms; thus, we do not conclude that Reliance's failure to make this differentiation was arbitrary or otherwise irrational in light of the provisions of the Plan. *See Jones*, 385 F.3d at 661.

Second, Okuno claims that Reliance erroneously interpreted the Mental or Nervous Disorders Limitation to apply "whenever a claimant's medical history includes a 'psychiatric component.'" Okuno asserts that where, as here, the evidence establishes that a claimant is "disabled by physical conditions alone, then the mere presence of a 'psychiatric component' does not justify application of the one-year mental health limitation."

This reasoning has been widely adopted. The Fifth Circuit recently observed that every federal circuit to consider the meaning of the phrase "caused by or contributed to by," in the Mental or Nervous Disorders Limitation (including, by its estimation, the Sixth Circuit in *Eastin v. Reliance Standard Life Ins. Co.*, No. 13-6247, 2014 WL 3397141 (6th Cir. July 10, 2014), as well as the Ninth and Third Circuits), has read it "to exclude coverage only when the claimant's physical disability was insufficient to render him totally disabled." *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 355-56 & n.9 (5th Cir. 2015). In *George*, a former helicopter pilot suffering disabling pain from a lower leg amputation was denied long-term disability benefits because "depression and post traumatic stress disorder . . . '*contributed to*' his overall impairment status." *Id*. at 352. The standard employed by the Fifth Circuit examined "whether the mental disability is a but-for cause of the total disability," noting that Reliance "itself

advocated this [but-for cause] interpretation in past litigation." *Id*. at 356 (citing *Gunn v. Reliance Standard Life Ins. Co.*, 399 F. App'x 147, 151 (9th Cir. 2010) (recounting Reliance's argument that "the language of the mental illness exclusion required [applicant] to show that he was totally disabled solely due to his physical condition stemming from his multiple sclerosis, without taking into account the disabling effects of any mental or nervous disorders")). Because George's physical disabilities independently rendered him totally disabled, the court found that Reliance abused its discretion in denying benefits on the basis of the Mental or Nervous Disorders Limitation. *George*, 776 F.3d at 356.

As identified in *George*, our opinion in *Eastin v. Reliance Standard Life Insurance Co.* supports the but-for interpretation of the Mental or Nervous Disorders Limitation. There, we affirmed the district court's judgment in favor of Reliance and against an applicant who claimed to be disabled by fibromyalgia, depression, and anxiety. *Eastin*, 2014 WL 3397141, at *1, 3. We highlighted the applicant's failure to claim total disability "as the result of a purely physical condition," and, considering that her medical records supported "a finding that her depression and anxiety contributed to her condition," upheld the denial of her application for long-term disability benefits based on the Mental or Nervous Disorder Limitation. *Id*. at *2-3.

On appeal, Reliance recasts its review as in accord with this but-for framework and contends that its consideration of Okuno's application fits squarely within the reasoning of *George* and *Eastin*. Reliance claims that it determined that Okuno's symptoms—insofar as they were related to her new conditions, and "absent any psychiatric contribution"—did not rise "to a level that would prevent Ms. Okuno from performing her sedentary occupation."

We find that this assertion is not supported by the administrative record. In its final determination of June 12, 2014, and in its motion for judgment on the record, Reliance explained that, irrespective of Okuno's other physical diagnoses, "there can be no question that she *also* suffers from psychiatric conditions," R. 13, PageID 66-67 (emphasis in original), and, because her medical records support "the continued presence of a psychiatric component," Okuno was eligible to receive benefits for a maximum of twelve months, R. 13-9, PageID 292. The district court granted Reliance's motion largely on this basis. R. 16, PageID 1185-87. Quoting the language from Reliance below, the court interpreted the Plan's language limiting benefits for

total disability "caused by or contributed to by mental or nervous disorders" to mean "that if Okuno's mental or nervous disorders were *part* of the disabling circumstances at any time, the limitation provision properly applied." *Id*. Though the district court referenced consideration of "whether Okuno's physical issues presented total disability," which is considered in the next section, it quickly returned to what it termed the "more significant" point that her own doctor had stated that she suffered from "depression and anxiety and that at least one of these mental and nervous disorders have been disabling for her." *Id*. at 1187, 1190. The district court concluded that Reliance's determination was reasonable because, despite what its consultants said, Okuno's "own doctor reached the same conclusions on key points that counter her benefits claim." *Id*. at 1190.

The primary rationale for the denial of long-term benefits to Okuno was not an independent assessment of her physical symptoms separate from any alleged mental health challenges. Rather, as explained by Reliance in response to Okuno's last appeal, the denial was based on a finding that "Ms. Okuno's records continue to support the continued presence of a psychiatric component." R. 13-9, PageID 292. In an effort to recast its argument on appeal, Reliance contends that Okuno has failed to produce evidence that establishes Reliance understood the Mental or Nervous Disorders Limitation to be "a complete bar to benefits absent separate evaluation of [her] physical conditions and any impairment resulting therefrom." This argument misunderstands the burden of proof. Reliance bears the burden to show that the exclusion on which it based denial of benefits, the Mental and Nervous Disorder Limitation, applies in this case. *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 443 (6th Cir. 2005).

We follow the analyses of our sister circuits and apply the but-for inquiry to the Mental and Nervous Disorders Limitation as did the Fifth Circuit in *George*, 776 F.3d at 355-56, as well as the Ninth and Third Circuits. *See Maurer v. Reliance Standard Life Ins. Co.*, 500 F. App'x 626, 628 (9th Cir. 2012); *Gunn*, 399 F. App'x at 153; *Michaels v. The Equitable Life Assurance Soc'y of U.S. Emps., Managers, and Agents Long-Term Disability Plan*, 305 F. App'x 896, 898, 907-08 (3d Cir. 2009). Thus, an application is not appropriately denied on the basis that a mental or nervous disorder "contributes to" a disabling condition; rather, the effect of an applicant's

physical ailments must be considered separately to satisfy the requirement that review be reasoned and deliberate.

Having found that Reliance capped Okuno's benefits at twelve months under the Mental and Nervous Disorders Limitation due to the presence of "a psychiatric component" to her disability, R. 13-9, PageID 292, we conclude that the June 12, 2014 decision was not "rational in light of the [P]lan's provisions." *Jones*, 385 F.3d at 661.

**B. Physical Disability**

The district court first concluded that Reliance properly applied the Mental or Nervous Disorders limitation, then briefly looked to whether Okuno's physical conditions presented total disability, and found that Reliance did not act arbitrarily and capriciously in determining they did not. R. 16, PageID 1187-88. Our de novo examination of the record compels the opposite conclusion. *Elliott*, 473 F.3d at 617.

We depart from the district court's treatment of Okuno's physical conditions on a number of points. First, Reliance relied exclusively on the use of file reviews by physicians in its employ. An inherent conflict of interest exists in Reliance's "dual function" where it is charged with both determining eligibility and paying benefits. *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd sub nom. Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); *see also Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998) (observing that "there is an actual, readily apparent conflict" where an administrator "interprets the plan, deciding what expenses are covered, and as issuer of the policy, it ultimately pays those expenses") (internal quotation marks omitted). The district court conceded that "an independent medical examination might have been more reassuring, especially in regard to the mental or nervous disorders determinations," but found the file review by the physicians hired by Reliance sufficient in this case. R. 16, PageID 1189.

While there is "nothing inherently improper with relying on a file review," we have observed that "the failure to conduct a physical examination, where the Plan document gave the plan administrator the right to do so," as Reliance's Plan expressly does, R. 13-1, PageID 86, "raises questions about the thoroughness and accuracy of the benefits determination." *Shaw v.*

*AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015) (alterations and internal quotation marks omitted); *see id.* (concluding that "[b]ecause chronic pain is not easily subject to objective verification, the Plan's decision to conduct only a file review supports a finding that the decision-making was arbitrary and capricious"); *see also Glenn*, 461 F.3d at 671 (counting administrator's decision to conduct a file review rather than an in-person examination as a "factor to be considered in the overall assessment of its decision-making process").

File reviews are particularly "questionable as a basis" for an administrator's determination to deny benefits where the claim, as here, involves a mental illness component. *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 702 (6th Cir. 2014). Evaluation of mental health necessarily involves "subjective symptoms," which are most accurately ascertained through "interviewing the patient and spending time with the patient," such that a purely record review will often be inadequate where a disability claim includes a mental component. *Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 508 (6th Cir. 2008). While Okuno did not raise a mental disability as part of her claim, Reliance denied her application based on the presence of a mental or nervous disorder, a finding that necessitated further review.

Another indication of the lack of reasoned deliberation arises from Reliance's failure to consult with medical professionals with relevant expertise. *See* 29 C.F.R. § 2560.503-1(h)(3)(iii) (requiring plan administrators, "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment" to "consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."). Okuno challenges the training of the two physicians hired by Reliance to review her file. She points out that Dr. Parillo is a specialist in orthopedics and sports medicine, R. 13-15, PageID 1023-24, and Dr. Karetzky is a pulmonologist with a geriatric focus, R. 13-18, PageID 1109-11. While both are board certified in internal medicine, and Dr. Karetzky apparently directed a sleep disorder clinic for many years, R. 13, PageID 56, neither of the doctors' curricula vitae indicate experience with Crohn's disease or Sjogren's syndrome. *See Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 507-08 (6th Cir. 2005) (examining the incentive of independent experts, when retained and compensated by plan

administrators, to find applicants are not disabled). The district court was not persuaded by Okuno's challenge to Dr. Karetzky's review on the basis that he lacked sufficient expertise in the relevant medical field, noting that "other file reviewers reached similar conclusions throughout the claims process," citing the opinions of Dr. Parillo and Nurse Walder. R. 16, PageID 1189-90.

While ERISA does not demand an examination by the narrowest of specialists, we have noted its requirement that administrators retain health care professionals in the specific field of medicine at issue. For instance, where an appeal of a denial of benefits challenged the reliability of a toxicology report, this court found that the plan fiduciary erred by relying on the opinion of a general internist rather than a forensic toxicologist. *Loan v. Prudential Ins. Co. of America*, 370 F. App'x 592, 598 (6th Cir. 2010) (noting also the reviewing doctor's unheeded advice that the fiduciary seek the opinion of a toxicology expert). In a similar case, we found that an administrator's reliance on the opinions of a clinical neuropsychologist and a psychologist regarding the functional impairments that accompanied an applicant's depression, panic disorder, and bipolar disorder, was unreasonable when the administrator did not also seek the input of a medical doctor or psychiatrist. *Smith*, 275 F. App'x at 506-07. Reliance's failure to consult with a mental health expert—particularly when it denied Okuno benefits on the basis that her disability included a psychiatric component—indicates a lack of deliberate and reasoned decision-making.

Furthermore, the record contains no indication that Reliance's reviewing health care professionals ever consulted with Okuno's treating physicians, the only doctors to actually examine her. *See Shaw*, 795 F.3d at 549 (observing that the plan administrator ignored evidence favorable to the applicant by making no reasonable effort to speak with his treating physician). The district court discounted the medical opinions of Okuno's treating physicians on the basis that they failed to link her diagnoses to specific limitations that rendered her disabled within the meaning of the Plan. R. 16, PageID 1187-88. Though the district court acknowledged evidence in the record that Okuno's doctors determined she was disabled and identified specific limitations, the court found "no analysis indicating . . . that when the doctors are talking about disabling conditions they mean the actual plan definition of 'totally disabled' or that they mean

to explain how the conditions inform the Plan's definition of 'any occupation.'" *Id*. at 1188. Here, the district court misunderstands our opinion in *Javery*, which it cited in support of this proposition. *Id*.; *Javery*, 741 F.3d at 701.

In *Javery*, we began our examination of a benefits claim by noting that a decision required "application of the relevant evidence to the occupational standard." 741 F.3d at 701. However, this charge was not—as interpreted by the district court—articulated as a requirement to medical professionals, but rather, as an instruction to the court. Indeed, it would be inappropriate for a medical professional to interpret the contractual language of the Plan and tailor his or her opinion accordingly because it would invade the province of the plan administrator and court to make legal determinations with the aid of medical evidence. *See, e.g.*, *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 727 (6th Cir. 2014) (noting in the area of Social Security benefits that a doctor's ultimate opinion that a patient is disabled is given no special significance because the issue is one ultimately reserved for the Commissioner).

While Reliance was not required to accord special deference to the opinions of Okuno's own doctors, "[b]y the same token, it may not arbitrarily repudiate or refuse to consider the opinions of a treating physician." *Glenn*, 461 F.3d at 671 (referencing with disapproval a plan administrator's failure to provide an explanation for its apparent rejection of a treating physician's opinion) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). Notably, the reports of Doctors Parillo and Karetzky are silent regarding the opinion of Okuno's treating neurologist, Dr. Jones. *See id*. at 674 (concluding that denial was not the result of a principled reasoning process where the plan administrator disregarded the opinion of applicant's treating physician, who "had expertise in treating [her] disability and had a long-term relationship with her").

Finally, we note the shifting rationale Reliance offered in support of its denial of Okuno's application over the course of the appeals process further supports our finding that Reliance arrived at its determinations arbitrarily and capriciously. *See Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 659 (6th Cir. 2013) (finding plan administrator's review of applicant's disability claim was reasonable, in part, because the basis underlying the denial "was consistent throughout the administrative-review process").

Taken together, these considerations lead us to conclude that the October 2013 denial of Okuno's application for long term-disability benefits was not based on substantial evidence. *See Baker*, 929 F.2d at 1144. The lack of a diligent and reasoned resolution—evidenced by failure to examine Okuno, file review by health care professionals without the relevant skill set, failure to consult with Okuno's treating physicians, and shifting explanations—indicates that Reliance's determination was arbitrary and capricious.

## C. Remedy

Okuno's brief on appeal originally sought reinstatement of her benefits. However, in her reply brief, she instead requested that we remand the case to the district court. Okuno notes that Reliance concluded summarily in its letters of denial that, barring her pre-existing conditions, depression, and anxiety, she could perform her duties as an art director, which is a sedentary occupation. She now requests that the matter be remanded to determine how her disability affects her performance of any occupation.

When the administrator's error touches "the integrity of the plan's decision-making process," rather than simply reaching the wrong conclusion where "a claimant was denied benefits to which he was clearly entitled," remand is generally the appropriate remedy. *Elliott*, 473 F.3d at 622 (alterations and internal quotation marks omitted). We agree that this matter should be remanded for further examination regarding whether Okuno's physical disabilities, apart from any alleged mental component, disable her from performing "the material duties of any occupation" as specified by the Plan's definition of "Total Disability" after the initial twelve months of benefits payments. *See* R. 13-1, PageID 94.

## III. CONCLUSION

In light of the reasoning set forth above, we REVERSE the order of the district court and REMAND the case for further proceedings consistent with this opinion.