NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1814
_____

SERILYN KRASH,
                              Appellant

v.

RELIANCE STANDARD LIFE INSURANCE GROUP
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-16-cv-00093)
District Judge: Malachy E. Mannion
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 22, 2018

Before: HARDIMAN, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Filed: February 12, 2018)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Serilyn Krash appeals a summary judgment denying her claim for long-term disability benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–461. We will affirm, essentially for the reasons stated in the District Court's thorough opinion.

I[1]

Prior to claiming disability benefits, Krash worked as a patient advocate at a nonprofit organization until she stopped working in May 2010 because of back pain. According to her orthopedic surgeon, the pain was attributable to spondylolisthesis, lumbar stenosis, and lumbago. Krash requested disability benefits from her employer's insurer, Reliance Standard Life Insurance Company. Reliance began making payments under Krash's policy four days later. After 90 days of continuing disability, the policy entitled Krash to continue receiving benefits for up to 24 months if she could prove that she was unable to perform the material duties of her regular occupation, and beyond that time if she could prove that she was unable to perform the material duties of "any occupation." App. 11. The policy also places a 24-month limit on benefits for a disability "caused by or contributed to by mental or nervous disorders." App. 59.

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

2

After making payments for four years, Reliance asked Krash to submit to an independent medical examination, and she did so on September 18, 2014. The examining physician, after interviewing Krash and reviewing her medical records, diagnosed Krash with "degenerative disc disease of the lumbar spine, status post multiple lumbar spine fusions, and body tremors." App. 23. He concluded that Krash was "capable of performing sedentary work activity." *Id.* In support of this conclusion, he noted that "there was no atrophy of the right or left upper or lower extremities, which indicates normal usage," and that Krash "had normal clinical evaluation of her lumbar spine . . . with only subjective complaints of mild pain on range of motion." App. 24. The physician also concluded that Krash's tremors were "psychogenic in nature." App. 24.

Based on the results of the independent medical examination, Reliance notified Krash in November 2014 that it was discontinuing her benefits because she "suffered a mental or nervous condition that contributed to her alleged disability and . . . was not, in the absence of a mental or nervous condition, physically disabled." App. 25. Having already received more than 24 months of benefits, Krash was ineligible for further benefits under the policy.

Krash appealed. In response, Reliance arranged for her medical records to be reviewed by an independent specialist. That specialist concluded that Krash was "able to perform fulltime activities throughout an 8-hour day" with certain limitations, such as not walking or standing for more than an hour continuously or three hours total per day.

3

App. 26–27. Citing this conclusion, the findings from the independent medical examination, and its review of Krash's medical records, Reliance notified Krash in June 2015 that it had upheld its decision.

Krash sued, claiming Reliance discontinued her benefits in violation of ERISA. The parties filed cross-motions for summary judgment. Finding that Reliance's benefits determination was not arbitrary or capricious, the United States District Court for the Middle District of Pennsylvania entered summary judgment in favor of Reliance and denied Krash's motion. Krash filed this appeal.

## II[2]

"We review a challenge by a participant to a termination of benefits under ERISA § 502(a)(1)(B) under an arbitrary and capricious standard where, as here, the plan grants the administrator discretionary authority to determine eligibility for benefits." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844 (3d Cir. 2011); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This standard is "highly deferential." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000). "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller*, 632 F.3d at 845 (internal quotation

---

[2] We review summary judgments de novo, applying the same standard as the District Court. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). We also review de novo the "district court's determination of the proper standard to apply in its review of an ERISA plan administrator's decision." *Id.*

4

marks and citation omitted). With this standard in mind, we must determine "whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time." *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 199–200 (3d Cir. 2002) (alteration in original) (citations omitted).[3]

Krash argues that Reliance's determination was arbitrary and capricious for two reasons. First, she claims the policy's "mental or nervous disorders" limitation does not apply because her disability began as a solely physical one. Second, she insists her spondylolisthesis entitles her to long-term benefits. We address each argument in turn.

A

According to Krash, her benefits are not subject to the "mental or nervous disorders" limitation because her mental conditions—depression, anxiety, posttraumatic stress, and psychogenic tremors—were "caused by and subsequent to her physical disability." Krash Br. 14. Krash argues that because two weeks passed between the time she stopped working and the first report of her mental conditions, the latter "could not

---

[3] The standard of review does not change where, as here, an insurance company both funds and administers benefits, thus creating a structural conflict of interest. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114–15 (2008); *Estate of Schwing v. Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2009). "Instead, courts reviewing the decisions of ERISA plan administrators or fiduciaries . . . should  . . . consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion." *Schwing*, 562 F.3d at 525.

have contributed to her disability." Krash Br. 10. Implicit in this argument is the premise that an insurer must assess whether a mental condition "contributed to" a disability only when the disability is first claimed. Krash's static interpretation of the limitation is inconsistent with the language of the policy. Therefore, the District Court did not err when it concluded that Reliance's contrary reading was not arbitrary or capricious.

The District Court noted, and Krash does not dispute, that her medical records indicate that her mental conditions contributed to her disability. For example, an orthopedic specialist observed that Krash's tremors were her "primary complaint." App. 33. Since they were "not spinal in nature," he recommended that Krash see a neurologist. *Id.* One of the two neurologists who evaluated her concluded that Krash's tremors were "related to a psychogenic movement disorder often triggered by childhood trauma." App. 33–34. The other noted that her "[a]nxiety makes things worse." App. 33. Both recommended that Krash pursue counseling. Based on this and ample evidence elsewhere in the record linking Krash's disability to her mental conditions, the District Court found that Reliance did not act arbitrarily or capriciously in determining that the 24-month "mental or nervous disorders" limitation applied to Krash's disability. That finding was well supported by the record.

B

As the District Court noted, because of the "mental or nervous disorders" limitation, in order to remain eligible for benefits past the 24-month mark, "it was

6

[Krash's] burden to prove that she was totally disabled from any occupation solely due to a physical condition." *Krash v. Reliance Standard Life Ins. Co.*, 248 F. Supp. 3d 600, 614 (M.D. Pa. 2017); *see also Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 607–09 (6th Cir. 2016) (joining the Third, Fifth, and Ninth Circuits in interpreting the phrase "caused by or contributed to by" in a mental disorders limitation clause to mean that benefits may be terminated when physical disability alone is insufficient to render a claimant totally disabled); App. 52 (requiring claimants to provide written proof of total disability). Krash argues that she carried that burden by citing her diagnosis of "Spondylolisthesis Grade II or higher," which the policy lists as a "qualifying disability." Krash Br. 11. This argument misconstrues the policy.

It is true that the policy's 24-month cap on benefits for disabilities "caused by or contributed to musculoskeletal and connective tissue disorders of the neck and back" exempts "Spondylolisthesis, Grade II or higher." App. 60. Yet the policy treats the exempted conditions "the same as any other Total Disability," *id.*, so claimants who suffer from spondylolisthesis may prove to Reliance that they are totally disabled. But that opportunity did not entitle Krash to benefits. As the District Court noted, "the fact that the plaintiff has been diagnosed with a condition does not equate to proof that she is totally disabled from any occupation as a result of that condition." *Krash*, 248 F. Supp. 3d at 614. Under the policy, Krash still had to prove that her condition prevented her from "perform[ing] the material duties of any occupation." App. 11–12 n.3.

7

In lieu of attempting to carry her burden, Krash offers only the conclusory assertion that she "could no longer continue to work due to her disability." Krash Br. 11. After reviewing in detail the opinions of the numerous physicians who evaluated her, including Krash's own physicians, the District Court concluded that the record did not support Krash's claim of total disability. Krash does not challenge any of the District Court's findings or explain why the Court's conclusion was erroneous. The physicians who performed Krash's independent medical examination and post-appeal review concluded that she was able to perform sedentary full-time work. And as the District Court noted, Krash's own physicians found that she "had good motor strength, no muscle wasting . . . and normal muscle tone and strength." *Krash*, 248 F. Supp. 3d at 615. Thus, notwithstanding Krash's subjective complaints, the record contains substantial evidence that Krash is not totally disabled under the policy. The District Court therefore did not err when it held that Reliance's decision to discontinue Krash's benefits was not arbitrary or capricious.

## III

For the reasons stated, we will affirm the judgment of the District Court.

8