NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0115n.06

Case No. 23-5619

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Mar 12, 2024
KELLY L. STEPHENS, Clerk

JOEY HARMON,                                       )
                                                   )
    Plaintiff-Appellant,                      )
                                                   )
    v.                                        )      ON APPEAL FROM THE
                                                   )      UNITED STATES DISTRICT
                                                   )      COURT FOR THE EASTERN
UNUM LIFE INSURANCE COMPANY OF                     )      DISTRICT OF TENNESSEE
AMERICA, et al.,                                   )
                                                   )
    Defendants-Appellees.                     )      O P I N I O N
                                                   )

Before: GRIFFIN, THAPAR, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Joey Harmon got permanent disability benefits from Unum Life Insurance Company of America (Unum) after hurting his back lifting a treadmill at work. After a long recovery and a move to Miami, he was finally cleared for light work, so Unum terminated his benefits. He brought an ERISA action in federal court, claiming both that the termination was arbitrary and capricious and that it was tainted by an internal conflict of interest. The district court disagreed. We AFFIRM.

## I.

On January 6, 2012, Joey Harmon injured his back lifting a treadmill while working as a facilities technician at a 24 Hour Fitness in Memphis, Tennessee. His position at 24 Hour Fitness generally required him to be able to lift at least 50 pounds, but after getting back surgery in November 2012, he was seen by Dr. Jonathan Hyde, who imposed a permanent lifting restriction of 35 pounds. In 2014, Harmon made a claim for worker's compensation. As part of that process,

Harmon submitted to an independent medical evaluation from Dr. Apurva Dalal, who gave him a 10-pound restriction. And the following year, a treating physician, Dr. Kenneth Jarolem, restricted him to five pounds. 24 Hour Fitness could not accommodate either a five- or a ten-pound lifting restriction, so Harmon was approved for long-term disability benefits on June 6, 2014, and started receiving them retroactively to June 13, 2013, from Unum, which underwrote for 24 Hour Fitness.

After 24 months of payments, Unum would only continue to consider Harmon disabled if he were unable to perform "any gainful occupation." And because Harmon was out of work, Unum defined "gainful occupation" as a job that pays at least 60% of Harmon's pre-injury earnings. For Harmon, that gainful wage was $13.54 or $13.68 an hour, depending on the calculation. When Unum's vocational consultant reviewed Harmon's job prospects in the Memphis labor market in May 2016, she found that the jobs he could perform with his skillset and physical restrictions only paid up to $12.33 an hour, so Harmon was still eligible for disability benefits.

Shortly after Unum approved his disability claim, Harmon applied for disability benefits from the Social Security Administration (SSA) in July 2014. SSA denied his claim in 2015, and Harmon had a hearing for reconsideration in 2016. In February 2017, after the hearing and its own review of Harmon's medical history, SSA independently determined that Harmon was *not* disabled and, with some exceptions, could, in addition to sedentary work, perform light work as defined in 20 C.F.R. § 404.1567(b), including the work of a cashier, ticket seller, or assembler.

This determination meant that, according to SSA, Harmon was capable of lifting up to 20 pounds, frequently lifting up to 10 pounds, and doing jobs that involve "a good deal of walking or standing." *See* 20 C.F.R. § 404.1567(b). In light of SSA's conclusion, Unum added cashier, ticket seller, and assembler to its vocational analysis, finding that even with those additions, there was still no gainful employment available for Harmon in the Memphis labor market.

That fall, Harmon disclosed on a phone call with Unum that he was living in Miami, Florida, and repeatedly lifting 10–15 pounds as part of his regular exercise regimen. And in October 2017, Unum reached out to Harmon's treating physician, Dr. Harris Mones, requesting updated medical records and including a form that asked if Harmon could do work that required him to occasionally walk, stand, and lift up to 20 pounds, while frequently lifting up to 10 pounds. Dr. Mones returned two responses by fax—seven days apart—with opposite conclusions. So in November, Unum had its clinical consultant, Nurse Deborah Ainscough, review Harmon's medical records to resolve the discrepancy. She agreed with Dr. Mones's second fax—that Harmon *was* capable of the light work described, emphasizing his lack of prescription pain medication, his activity levels, and Dr. Hyde's 35-pound lifting restriction.

In the meantime, Unum conducted a new vocational assessment, focusing on the Miami labor market and including the light work it and SSA determined Harmon could handle, finding alternative occupations that paid up to $15.27 an hour—a gainful wage. As a result, Unum determined that Harmon was no longer eligible for disability benefits. Harmon appealed the following May. Although Dr. Mones clarified in January 2018 that he did *not* believe Harmon could do light work, Unum upheld its termination after its in-house physician, Dr. Beth Schnars, reviewed Harmon's medical records.

Harmon then brought an ERISA action in federal court, with the primary claim that Unum's decision was arbitrary and capricious. He also argued that the termination of his benefits was tainted by a conflict of interest, producing weekly tracking reports to claim that Unum's director supervising Harmon's claim, Director Wesley Ridlon, was unduly motivated by financial targets. The district court disagreed on both, granting Unum's motion for judgment on the record. Harmon timely appealed.

**II.**

We review the district court's judgment on the administrative record de novo. *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008). And because Unum's policies vest discretion to determine benefit eligibility, we review the administrator's decision under the arbitrary-and-capricious standard. *Id.* So we uphold that decision when "it is the result of a deliberate, principled reasoning process" and "supported by substantial evidence," *id.*, focusing on the "ultimate decision" rather than "discrete acts," *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1066 (6th Cir. 2014).

This means that even if the record could "support a finding of disability," we will affirm the administrator's decision "if there is a reasonable explanation" for it. *Schwalm v. Guardian Life Ins.*, 626 F.3d 299, 308 (6th Cir. 2010).

Harmon challenges Unum's decision to terminate his benefits as arbitrary and capricious, citing three main factors: (1) Unum's reliance on its in-house file-reviewing physician, Dr. Schnars; (2) Unum's interpretation of Dr. Mones's opinions; and (3) Unum's vocational analysis.

First, Harmon claims Unum's use of an in-house file reviewing physician over his treating providers was unreasonable. But "[r]eliance on [non-treating] physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). And Dr. Schnars's review properly accounted for Harmon's treating providers. Moreover, the available record showed that before Unum terminated his benefits, Harmon had not gotten a subspecialty evaluation for his back pain since 2014, and he hadn't been prescribed pain medication since 2016. He also denied having back pain at a physical in 2018, and his treating physician reported that his spine had a full range of motion.

Because Harmon's treating provider, Dr. Mones, had opined in January 2018 that Harmon could not return to work, Dr. Schnars reached out to ask how he came to that conclusion. But Dr. Mones only replied with a conclusory assertion that Harmon could not work based on a December 2017 examination and Mones's own review of unspecified medical records. Dr. Mones's notes from December 2017, however, reflected a largely "unremarkable" examination, and that the appointment's primary purpose was to correct a paperwork discrepancy.

Dr. Mones gave Dr. Schnars no compelling reason to credit his opinion over her own review and SSA's independent finding that Harmon could perform light work. *See Creech v. Unum Life Ins. Co. of N. Am.*, 162 F. App'x 445, 455 (6th Cir. 2006) (per curiam) (A treating physician's "failure to support his opinion with data or useful analysis is a sufficient reason to discount his opinion."); *Glenn v. Metlife*, 461 F.3d 660, 667 (6th Cir. 2006) ("The courts have recognized that a disability determination by the Social Security Administration is relevant in an action to determine the arbitrariness of a decision to terminate benefits under an ERISA plan."). And even though Drs. Jarolem and Dalal respectively assigned five- and ten-pound lifting restrictions, neither matched up with how Harmon himself described his activity level, which included repeatedly lifting 10–15 pounds. So despite Harmon's reports of pain, Dr. Schnars properly based her opinion "on objective medical evidence rather than on the claimant's subjective complaints." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007).

Harmon separately disputes Dr. Schnars's qualifications because she specializes in internal medicine instead of orthopedics. But "ERISA does not demand an examination by the narrowest of specialists." *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 610 (6th Cir. 2016). And Harmon has not argued that his preferred doctor, Dr. Mones, specialized in orthopedics either. Unum reasonably relied on Dr. Schnars's file review.

Second, Harmon claims that Unum arbitrarily misinterpreted Dr. Mones's opinions when his office faxed Unum two forms with opposite conclusions about Harmon's ability to work. He claims that Unum unreasonably relied on the second form, which said Harmon *could* return to work, even though Dr. Mones later clarified that he still considered Harmon disabled. But Dr. Schnars did not take this second form as Dr. Mones's opinion. Instead, she correctly understood he felt differently and reached out for clarification—clarification he would not provide.

So with Harmon's self-reported activity level and SSA's independent finding that he was not disabled, it was reasonable for Unum to rely on Dr. Schnars's review to conclude that Harmon could do light work. And this analysis fell in line with the 35-pound lifting restriction Dr. Hyde recommended in 2013. *See McDonald v. W–S Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003) ("Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious . . . .").

Third, Harmon contends that Unum's November 2017 vocational analysis improperly looked at Miami instead of Memphis and that Unum changed its opinion unreasonably quickly. But Harmon himself reported in September 2017 that he lived in Miami. And Unum's change in opinion came from two material updates it received after its prior review two years before: (1) that Harmon could complete light work, and (2) that he moved to Miami from Memphis. Thus, the change in opinion was reasonable.

Finally, Harmon levels a separate claim that Unum's dual role of both paying benefits and determining eligibility created a conflict of interest that affected his claim. But an alleged conflict matters only if there is also "evidence suggesting that the conflict materialized in a concrete way to influence the administrator's decisional process." *Autran v. Procter & Gamble Health & Long-*

*Term Disability Benefit Plan*, 27 F.4th 405, 418 (6th Cir. 2022). And that evidence must be "significant," showing "that the conflict actually affected or motivated *the decision at issue*." *Cooper*, 486 F.3d at 165 (emphasis added). "[C]onclusory allegations of bias based on this (relatively common) inherent conflict do not deserve much weight." *Autran*, 27 F.4th at 418 (internal quotation marks omitted).

On top of Unum's structural conflict of interest, Harmon points to Director Ridlon's weekly reports, which track the opening and termination of claims under his purview, speculating that they impose an undue pressure to terminate benefits and led to Harmon's own termination. But this court has reviewed allegations of bias using these same tracking reports before and found none. *See Sandeen v. Unum Grp. Corp.*, No 22-5374, 2023 WL 2379012 at *2 (6th Cir. Mar. 7, 2023). And like in *Sandeen*, the professionals in charge of reviewing Harmon's claim had no access to Ridlon's reports. Thus, Unum's structural conflict of interest does not rebut the fact that the ultimate decision to terminate Harmon's benefits was "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Bennett*, 514 F.3d at 552.

**III.**

For the reasons set forth above, we AFFIRM.