NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0708n.06

**No. 09-3214**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 03, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| RICHARD HARPS, GENE DeFLORVILLE, MELVIN HARSEY, ALEXANDRA KOLLIAS, LENORE LADO, JUDITH O'NEIL, THOMAS O'NEIL, FARRELL THOMAS, and JOSEPH WIECZOREK, | ) ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE NORTHERN DISTRICT OF OHIO |
| TRW AUTOMOTIVE U.S., LLC, | ) ) | |
| Defendant-Appellee. | ) ) | |

BEFORE: GILMAN and GRIFFIN, Circuit Judges, and STEEH, District Judge.[*]

PER CURIAM.

Plaintiffs, retired employees (or their dependents) of defendant TRW Automotive U.S., LLC

("TRW"),[1] appeal the district court's dismissal of their complaint under Rule 12(b)(6) of the Federal

Rules of Civil Procedure for failure to state a claim for vested retiree medical benefits. Because the

district court did not err in ruling that a collective bargaining agreement unambiguously disclaimed

---

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]Although the retired employees were employed by non-party TRW, Inc., defendant TRW Automotive U.S., LLC, succeeded TRW, Inc., and assumed all liabilities relating to this lawsuit.

TRW's obligation to provide lifetime retiree medical benefits and that a plant shutdown agreement did not enlarge plaintiffs' rights or supplant the collective bargaining agreement, we affirm.

I.

The facts are not disputed. TRW operated a plant in Cleveland, Ohio, which manufactured engine valves. Beginning in 1992, the production and maintenance employees at the plant were represented by Local 2400 of the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").

In 1997, TRW and UAW negotiated and signed a Collective Bargaining Agreement ("CBA"). The CBA provided, in relevant part:

**Retiree Medical Benefits**

TRW agrees to provide the following medical benefits to Cleveland Valve Plant and Clarkwood retirees and disabled employees who retired or became disabled on or after April 1, 1992 and those employees who retire during the term of this contract. The qualified dependents, widows and widowers of these groups are also eligible.

1.  The TRW Cleveland Area Plan and the TRW Medicare Supplement Plan at the current level of medical benefits or their equivalent will be maintained, or:

2.  Health Maintenance Organizations (HMO's) will continue to be offered.

TRW will contribute 75% of the monthly premium rate for the program in which the retirees participate. TRW reserves the right to make reasonable modifications to the benefits provided in the summary plan description. This clause shall not be construed to convey any rights to those beyond the term of this agreement.

The CBA also stated:

**33.1 Term.** This Agreement shall remain in full force and effect until midnight, March 31, 2002, and thereafter until either party gives sixty (60) days written notice

by registered mail to the other party of the termination of this Agreement whereupon the same shall be terminated after said sixty (60) days, provided, however, that on or after April 1, 2002, either party may terminate any provision thereof upon such notice without terminating the remainder of this Agreement.

In October 2001, TRW announced that it was closing the plant. Thereafter, TRW and UAW negotiated and signed a Plant Shutdown Agreement ("Shutdown Agreement"), effective February 2002. The Shutdown Agreement provided, in relevant part:

4.    The following additional compensation and benefits will be provided to affected employees, where applicable.

\* \* \*

    i.    <u>Pension Plan</u>. Pursuant to the terms of the TRW UAW Local 2400 Pension Plan, affected employees will continue to be credited with up to 12 months of service following their date of layoff for purposes of determining eligibility for and amount of the benefit under the Plan. Service will stop accruing under that Plan if during that 12-month period the affected employee dies or retires.

        For purposes of eligibility for a normal or early retirement under the pension plan, an affected employee's severance from service date shall be deemed to be 12 months after the date of their layoff, or earlier if they die or retire prior to that date.

        Employees, who retire during the 12-month period, or prior to that period, will receive the retiree health care benefits provided for in the collective bargaining agreement.

\* \* \*

15.    Except as modified by this Plant Shutdown Agreement, the Collective Bargaining Agreement between the parties dated April 1, 1997, is extended and shall remain in effect until June 30, 2002.

> If any provision of the Collective Bargaining Agreement is inconsistent with any provision for the Plant Shutdown Agreement, the provisions of the Plant Shutdown Agreement shall govern.

* * *

> 21. Nothing in this Agreement shall be construed as waiving any Pension or Retirement benefits (including retiree medical) the affected employee may have under the terms of the Collective Bargaining Agreement.

In addition, paragraph 10 provided that "[e]ach affected employee will sign a Receipt and Release . . . prior to receiving any payments and/or benefits provided in th[e] [Shutdown] Agreement" and that signing the Release will "extinguish all rights the employee may have under the Collective Bargaining Agreement dated April 1, 1997." In the Release and Waiver attached as an exhibit to the Shutdown Agreement, the employee agreed to waive "any claims or causes of action . . . related to . . . the closing of the plant except for any individual statutory claims . . . vested rights (such as pension and insurance), and any rights set forth in the termination agreement."

The plant closed in July 2002. Plaintiffs, all of whom were UAW employees or their spouses, retired from the plant before or at the time of its closure. Thereafter, TRW continued to provide its retirees with the health care benefits described in the CBA until the end of 2005.

In October 2005, TRW sent letters to its retiree medical plan participants explaining that, "[a]s healthcare costs continue to increase significantly year after year, TRW cannot continue 'business as usual[.]'" The letters notified retirees that TRW was modifying their health care options. Specifically, the company advised its Medicare-eligible retirees that two Medicare Supplement Plan ("MSP") options, MSP IV and Kaiser Medicare Plus-OH, would be discontinued

beginning January 1, 2006. At that time, all retirees who were covered by either of those plans would be enrolled automatically in a third option, Aetna MSP III. Unlike the previous two options, MSP III did not provide coverage for prescription drugs. TRW explained that it was making this change because the federal government had expanded Medicare to include optional prescription drug benefits (Medicare Part D) beginning in January 2006.

The letters also notified all retirees, including those not eligible for Medicare, that TRW intended to modify the health coverage contribution structure. For Medicare-eligible retirees, TRW agreed to pay 100% of the 2006 monthly MSP III premiums rather than the 75% contribution required by the CBA, explaining that, for 2006, retirees could purchase Medicare Part D with the resulting savings. For Medicare-ineligible retirees, TRW announced that there would be no increase in the retirees' premiums for 2006. However, as to both groups, TRW capped indefinitely its plan contribution at the 2006 dollar amount (rather than its previous percentage contribution), explaining that, after 2006, all retiree medical plan participants would be responsible for future inflationary increases in plan costs.

The UAW "vigorously object[ed]" to these intended changes and "demand[ed] that TRW retain the current benefits and premiums." The UAW's November 1, 2005, correspondence stated that "[p]ursuant to our last collective bargaining agreement, ERISA and the close out agreement between TRW and the UAW, our retiree health insurance benefits are lifetime, vested benefits, which cannot unilaterally be altered at any time." By letter dated November 11, 2005, TRW

responded that it would go forward with the changes and would "work with health care providers to hold down escalating costs and manage inflationary increases."

On September 5, 2008, plaintiffs filed a two-count, purported class action lawsuit on behalf of themselves and a class of approximately 924 "similarly situated retirees, spouses, and surviving spouses and dependents" in the United States District Court for the Northern District of Ohio.[2] Count I alleged a breach of the Shutdown Agreement, in violation of § 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. Count II was brought pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiffs complained that TRW's modifications provided less coverage to Medicare-eligible retirees and their spouses and dependents, caused dramatic increases in their health care costs, and resulted in their forgoing of medical treatment. Plaintiffs sought damages and lifetime reinstatement of retiree health insurance coverage to pre-January 2006 levels.

On January 26, 2009, the district court granted TRW's motion to dismiss the complaint for failure to state a claim upon which relief could be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held that the CBA unambiguously disclaimed TRW's obligation to provide plaintiffs with vested health benefits and that the Shutdown Agreement did not enlarge or supplant TRW's health insurance obligations to plaintiffs.

Plaintiffs timely appealed.

---

[2]The complaint was not certified as a class action lawsuit by the district court prior to this appeal.

II.

The complaint asserted two claims: breach of the Shutdown Agreement, in violation of § 301 of the LMRA, and denial of vested health care benefits, contrary to § 502 of ERISA. The district court and the parties agree on three preliminary matters. First, they are in accord that, because ERISA does not require the vesting of rights in health or welfare plans, plaintiffs' ERISA claim is derivative of their § 301 claim. Second, the parties concur that the sole issue is whether TRW agreed to provide vested health care benefits to plaintiffs. Third, they stipulate that "vesting," if it occurred, means two things for purposes of this lawsuit: (1) retiree health benefits are available to plaintiffs for life, and (2) TRW's unilateral modification of those benefits was impermissible. *But contrast Reese v. CNH Am. LLC*, 574 F.3d 315, 318, 327 (6th Cir. 2009) (holding that even though the CBA granted retirees lifetime health-care benefits upon retirement, it did not resolve the *scope* of those benefits because "the relevant CBA provisions suggest[ed] that the parties contemplated reasonable modifications") with *Yolton v. El Paso Tenn. Pipeline Co.*, 435 F.3d 571, 578 (6th Cir. 2006) ("If a welfare benefit has vested, the employer's unilateral modification or reduction of those benefits constitutes a LMRA violation.") and *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998) (en banc) ("To vest [welfare] benefits is to render them forever unalterable.").

A.

We give fresh review to a district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Gunasekera v. Irwin*, 551 F.3d 461, 465-66 (6th Cir. 2009). Dismissal under Rule 12(b)(6) eliminates a pleading or portion of a pleading that fails to state a

claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Under Rule 8(a)(2) of the Federal

Rules of Civil Procedure, the complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief[.]" In deciding whether to dismiss under Rule 12(b)(6),

"[w]e accept all the Plaintiffs' factual allegations as true and construe the complaint in the light most

favorable to the Plaintiffs." *Gunasekera*, 551 F.3d at 466 (citations and internal quotation marks

omitted). However, to survive dismissal, the complaint must contain enough facts to establish a

"plausible," as opposed to merely a "possible," entitlement to relief. *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557, 570 (2007)).

Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Finally, a district court's

consideration of documents that are central to the plaintiffs' claims and to which the complaint refers

and incorporates as exhibits is proper when assessing a Rule 12(b)(6) motion. *Amini v. Oberlin*

*College*, 259 F.3d 493, 502 (6th Cir. 2001).

B.

In this appeal, plaintiffs contend that the CBA did not unambiguously impose a durational

limit on retiree medical benefits. TRW counters that plaintiffs have forfeited the issue because they

did not argue that the CBA was ambiguous before the district court.

We agree with TRW that the issue is forfeited. In their response in opposition to TRW's

motion to dismiss, plaintiffs did not challenge the principal basis upon which TRW sought to dismiss

their complaint – that the CBA unambiguously afforded plaintiffs no right to retiree medical benefits

beyond its expiration date. Instead, plaintiffs relied solely upon the Shutdown Agreement to support

their entitlement to vested medical benefits. Central to the district court's analysis was plaintiffs'

lack of argument, and therefore their implicit concession, *cf. Baxter v. Palmigiano*, 425 U.S. 308,

318 (1976) (holding that, in a civil action, a party's silence – its refusal to testify – in response to

probative evidence offered against it permits an adverse inference), that the CBA did not confer upon

them an absolute right to medical benefits beyond its term:

> Plaintiffs do not assert that the statement in the Retiree Medical Benefits clause in
> the CBA providing, "This clause shall not be construed to convey any rights to those
> beyond the term of this agreement" is ambiguous. Plaintiffs, therefore, agree that the
> language limited retiree healthcare benefits to the term of the 1997 CBA and,
> accordingly, the benefits were not vested. And, the CBA provided, under the "term"
> clause, that "either party may terminate any provision" after the CBA's expiration.
> Based on this language, defendant had no obligation to provide retiree benefits after
> the CBA expired.

It is well-established that issues not presented to and considered by the district court are

generally not preserved for appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir.

2008). This rule (1) allows the district court to perform its important role of considering issues in

the first instance, thereby "eas[ing] appellate review" and (2) "ensures fairness to litigants by

preventing surprise issues from appearing on appeal." *Id*. To consider for the first time in this

appeal plaintiffs' newly raised challenge to TRW's and the district court's interpretations of the

CBA's language would subvert both of these policies. We therefore deem the issue forfeited.

Assuming arguendo that the issue was properly preserved, we do not share plaintiffs' view

that the CBA is ambiguous. The operative language – "[t]his clause shall not be construed to convey

any rights to those beyond the term of this agreement" which concluded the "Retiree Medical

Benefits" section of the CBA – unambiguously disclaimed TRW's obligation to provide retiree medical benefits beyond the CBA's term. The CBA defined "term" as its expiration date. In this way, the operative provision functioned as a specific durational limit on retiree medical benefits. *See, e.g., Am. Fed'n of Grain Millers v. Int'l Multifoods Corp.*, 116 F.3d 976, 981 (2d Cir. 1997) (holding that a durational clause providing that "retiree medical benefits could not be reduced '[d]uring the term of this Agreement'" did not establish a vested right to medical benefits because "[p]romising to provide benefits for a certain period of time necessarily establishes that once that time period expires, the promise does as well."); *Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 858, 860 (E.D. Mich. 1998), *aff'd per curiam*, 201 F.3d 440 (6th Cir. 1999) (unpublished) (holding that a durational clause providing that "[t]he company has established an Insurance Plan for employees covered by this Agreement and this Plan shall remain in effect for the duration of the [CBA] without costs to said employees" . . . "expressly limit[ed] the provision of retiree benefits to the duration of the [CBA]."); *UAW v. Cleveland Gear Corp.*, No. C83-947, 1983 WL 2174, at *2 (N.D. Ohio Oct. 20, 1983), *aff'd*, 746 F.2d 1477 (6th Cir. 1984) (unpublished table mem.) (holding that a durational clause providing that "'[t]he Insurance Agreement and Insurance Plan, as revised, shall be effective as provided therein and shall remain in full force and effect during the term of this collective bargaining agreement' . . . clearly demonstrate[d] the intent of the parties to restrict to the term of the [CBA] the specific insurance benefits contained in the Insurance Agreement and Insurance Plan.").

In contrast to the above-cited cases in which a plausible argument could be made that the durational clauses were ambiguous because they were silent about what rights, if any, would exist when the CBAs expired, the durational clause at issue here was forward-looking. It disclaimed any obligation "to convey any rights to those *beyond* the term of this agreement[,]" thereby rendering plaintiffs' assertion of ambiguity and claim to vested benefits implausible. (Emphasis added.) While maintaining that the above-cited cases are distinguishable or of questionable continuing validity, plaintiffs cite no authority construing similar language to provide vested benefits.

C.

Plaintiffs also argue, as they did below, that the Shutdown Agreement by itself or in conjunction with the CBA, plausibly suggested an intent to provide them with vested medical benefits. After carefully reviewing the record below, reading the parties' briefs, and considering the arguments made by both parties at oral argument, we are persuaded that the district court properly analyzed this issue and correctly held that the Shutdown Agreement, either by itself or in conjunction with the CBA, did not plausibly suggest that the parties intended to provide plaintiffs with vested retiree medical benefits. Rather than issue a detailed opinion on this issue, which would serve no useful purpose, we adopt the district court's reasoning set forth in its Memorandum of Opinion and Order dated January 26, 2009.

III.

We affirm the judgment of the district court.