RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0252p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ANNETTE MCEACHIN,

        *Plaintiff-Appellee/Cross-Appellant*,

    *v.*

RELIANCE STANDARD LIFE INSURANCE COMPANY,

        *Defendant-Appellant/Cross-Appellee*.

> Nos. 24-1071/1100

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:21-cv-12819—Terrence George Berg, District Judge.

Argued: October 31, 2024

Decided and Filed: November 13, 2024

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Joshua Bachrach, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, Philadelphia, Pennsylvania, for Reliance Standard Life Insurance Company. Donald W. Busta, Jr., LEVINE BENJAMIN, P.C., Southfield, Michigan, for Annette McEachin. **ON BRIEF:** Joshua Bachrach, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, Philadelphia, Pennsylvania, William S. Cook, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, Livonia, Michigan, for Reliance Standard Life Insurance Company. Donald W. Busta, Jr., LEVINE BENJAMIN, P.C., Southfield, Michigan, for Annette McEachin.

─────────────────

## OPINION

─────────────────

SUTTON, Chief Judge. For nearly four years, Reliance Standard Life Insurance Co. paid total disability benefits to Annette McEachin. It stopped the payments when McEachin's

physical health improved.   McEachin sued the insurance company under ERISA, more fully known as the Employee Retirement Income Security Act.   The district court agreed with Reliance that McEachin no longer had a physical disability but found that her ongoing mental-health disabilities entitled her to two more years of benefits.   We vacate in part, affirm in part, and remand the case to the district court.

I.

In February 2017, two years into McEachin's employment as a human resources manager at Perceptron, Inc., a car accident seriously injured her.   She left the job, and within months submitted a disability claim to Reliance, citing "[r]ecurrent headaches, neck and back pain from" the car accident.   R.9 at 564.   In June 2017, Reliance approved her for long-term disability benefits.

McEachin's condition worsened when she had another car accident at the end of that year.   As a result of the accidents, McEachin underwent three major spinal surgeries between 2018 and 2021, attended numerous physical therapy sessions, and took injections for migraines and prescription medications for pain. McEachin's mental health suffered, too.   During the same period, providers treated her for depression, anxiety, and sleep disruptions.   Making matters considerably worse, McEachin's son committed suicide in 2019.   That generated post-traumatic stress disorder and grief that took an additional toll.

Under McEachin's insurance policy, a "Total Disability"—meaning she could not "perform the material duties" of her job—entitled her to a monthly payment until retirement age. R.9 at 9, 12, 19.   The policy came with a limitation.   If a "mental or nervous disorder[]" "caused . . . or contributed to" the insured's "Total Disability," she would be entitled to benefits for a total of 24 months.   R.9 at 23.

For over three years, Reliance paid McEachin long-term disability benefits without issue, and McEachin periodically submitted updated health information as the policy required.   In October 2020, Reliance ended McEachin's benefits.   McEachin appealed and supplied additional medical documentation.   Based on her updated medical reports, Reliance found that, "from a physical perspective," McEachin could not perform her duties at work.   R.9 at 510.   From a

mental-health perspective, Reliance noted, McEachin faced no cognizable barriers to working. The insurance company reinstated her benefits.

In April 2021, Reliance stopped paying McEachin's benefits again. McEachin appealed. She submitted documentation from her medical providers, claiming that depression, migraines, and chronic pain showed she was still totally disabled. Reliance enlisted an independent medical review, which concluded that McEachin could perform her prior job "from a physical standpoint." R.9 at 533, 535–38. In denying benefits, Reliance noted "significant improvement in migraines" and "significant relief of chronic back/leg pain with physical therapy and injections." R.9 at 534.

Reliance acknowledged that McEachin's "psychiatric" issues still rendered her unable to work full-time. R.9 at 537. It nonetheless denied McEachin's appeal because of her insurance policy's 24-month limitation on benefits for mental disorders that "cause[d] . . . or contribute[d] to" her total disability. R.9 at 537. Because McEachin had presented psychiatric symptoms "since at least May 2017," the company noted, the policy's 24-month clock had run. R.9 at 537. In the absence of a total disability created only by physical impairments, Reliance reasoned that McEachin had no basis for obtaining additional benefits.

Having exhausted her administrative remedies with Reliance, McEachin filed this lawsuit against the insurance company under ERISA. Both parties moved for summary judgment. The magistrate judge recommended denying McEachin's motion and granting Reliance's motion. The district court agreed with Reliance that McEachin lacked a total physical disability as of April 2021. But it found that McEachin's mental-health disability entitled her to 24 months of additional benefits starting in April 2021. Reliance appealed, and McEachin cross-appealed.

## II.

*Reliance's appeal.* Did the district court correctly interpret the interplay of the physical and mental-health components of this insurance policy? More specifically, does Reliance at least owe McEachin 24 months of benefits running from April 2021 to April 2023?

If an ERISA-covered insurance plan gives the administrator discretion in implementing it, we review the plan administrator's implementation of the plan for abuse of discretion. *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006). But Michigan law bans the use of such discretionary clauses in insurance policies. *See* Mich. Admin. Code R. 500.2202(b). As a result, we apply fresh review to its decision. *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 608 (6th Cir. 2009).

Here's what the insurance policy says. It offers monthly benefits if a claimant:

(1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
(2) is under the regular care of a Physician;
(3) has completed the Elimination Period; and
(4) submits satisfactory proof of Total Disability to us.

R.9 at 19. A "Total Disability" exists when:

[A]s a result of an Injury or Sickness, during the Elimination Period and thereafter an Insured cannot perform the material duties of his/her Regular Occupation.

R.9 at 12. The policy comes with a limitation for "mental or nervous disorders." In that setting, it provides:

Monthly Benefits for Total Disability caused by or contributed to by mental or nervous disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months unless the Insured is in a Hospital or Institution at the end of the twenty-four (24) month period. The Monthly Benefit will be payable while so confined, but not beyond the Maximum Duration of Benefits.

R.9 at 23. The insurance company bears the burden of showing this exclusion applies. *Okuno v. Reliance Standard Life Ins.*, 836 F.3d 600, 609 (6th Cir. 2016).

Here's how we have interpreted a similar policy, in fact a like-worded policy issued by Reliance. In *Okuno*, a claimant appealed the denial of benefits for her disability caused by Crohn's disease, narcolepsy, depression, and anxiety. *Id.* at 605. Reliance argued that a similar mental-health limitation justified the denial of benefits due to "the continued presence of a psychiatric component." *Id.* at 608. We disagreed. The "mere presence" of anxiety and depression, we determined, did "not justify application of the . . . mental health limitation." *Id.* at 607. Rather, Reliance had to consider "separately" from her anxiety and depression whether

her physical condition rendered her totally disabled. *Id.* at 609. If her physical limitations by themselves warranted benefits, if they were the "but[] for" cause of her total disability, the mental-health limitation did not apply. *Id.* at 608–09.

The same approach governs this case. We ask whether McEachin's total disability exists without regard to her mental-health conditions. *Id.* If it does, if in other words her physical disabilities alone justify disability benefits, the mental-health 24-month clock does not start. *Id.*

We are not the only circuit to face this issue. The Fifth Circuit construed a similar mental-health limitation, also written by Reliance, to "exclude coverage only when the claimant's physical disability" by itself fails to make the individual totally disabled. *George v. Reliance Standard Life Ins.*, 776 F.3d 349, 355–56 & n.9 (5th Cir. 2015). So too for the Third Circuit. Insurers failed arbitrary and capricious review, it concluded, when they applied a mental-health limitation despite a physical impairment "independently sufficient" to cause total disability. *Michaels v. Equitable Life Assurance Soc'y*, 305 F. App'x 896, 901, 904 (3d Cir. 2009). And for the Eighth Circuit. A claimant, it reasoned, could receive only 24 months' benefits "if, but for her anxiety and depression, she would not be totally disabled" because "her physical conditions must independently render her unable to work." *Weyer v. Reliance Standard Life Ins.*, 109 F.4th 1072, 1077 (8th Cir. 2024). Same for the Ninth Circuit. Reliance "did not abuse [its] discretion in denying benefits" under a mental-health limitation, the court determined, if a claimant's physical condition "alone was not disabling." *Gunn v. Reliance Standard Life Ins.*, 399 F. App'x 147, 153 (9th Cir. 2010).

Measured by this test, the 24-month limitations period in McEachin's policy began to run in April 2021. Until then, McEachin's physical disability alone justified benefits. Recall that when McEachin first applied for disability payments in 2017, she cited only physical symptoms. When Reliance reinstated McEachin's benefits in October 2020, it explicitly said that her physical state—but not her mental state—prevented her from working. On this record, McEachin's "physical conditions alone" entitled her to disability coverage before April 2021, meaning that "the mere presence" of additional mental-health issues did "not justify application of the [two]-year mental health limitation." *Okuno*, 836 F.3d at 607.

Reliance tries to counter this conclusion in several ways. Invoking the language of the policy, Reliance notes that the 24-month period kicks in when the total disability is "caused by or contributed to" by mental or nervous disorders. As Reliance sees it, the anti-surplusage canon requires us to give both words—"cause" and "contribute"—independent meaning. Because McEachin had some treatment for mental-health conditions before April 2021, it claims, those conditions "contributed" to McEachin's disability, even if they did not fully cause it, and triggered the policy before then.

The short answer to this argument is that our decision in *Okuno* does not construe the phrase in this way. The 24-month limit, we reasoned, applied only if "but[] for" her mental-health challenges she would not be totally disabled. 836 F.3d at 608. The "mere presence" of mental health challenges, we explained, did "not justify application of the [two]-year mental health limitation." *Id.* at 607.

We do not recoil, at any rate, at giving "cause" or "contribute" similar meanings in this insurance contract. "The [anti-surplusage] canon needs to be deployed with special care in a setting—insurance contracts—in which redundancies abound and particularly in a 26-page contract in which iteration is afoot throughout. It is no overstatement to say that it would not be an insurance contract if it did not come with some surplusage." *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 406 (6th Cir. 2021) (quotation omitted). Not every insurance belt—this one 33 pages long—precludes suspenders.

Plus, even if we tried to do what Reliance asks—treat "cause" as sole cause and "contribute" as partial cause—it's not clear that would advance its position. The question would remain whether her mental-health conditions "contributed" to her "Total Disability" during the relevant period. Until April 2021, it's fair to say, they did not. Before then, her physical limitations alone sufficed to establish her "Total Disability," making the mental-health 24-month limitation irrelevant until then.

At all events, the first response to this line of argument remains the key one: We must respect our decision in *Okuno*. Under that decision, a mental-health disability does not "cause or

contribute to" a "total" disability" if existing physical disabilities suffice by themselves to cause it.

Reliance insists that *Okuno* can be distinguished—that it does not apply if a physical disability has dissipated by the time the insurance company denies benefits. As it reads the decision, *Okuno* applies only to "sets of facts" where a physical disability "independently continues beyond" a mental-health limitation. First Br. 29. That approach requires squinting at *Okuno* so narrowly that it creates a mirage. In reality, we never held that the claimant in *Okuno* had a physical disability. We instead remanded the case for factfinding after Reliance acted "arbitrarily and capriciously in determining [she] did not" have a physical disability. 836 F.3d at 609. No less importantly, and more dispositively, *Okuno*'s reasoning tracks the approach of the other circuits that have addressed this issue. As in these other cases, *Okuno* reasoned that the mere presence of mental-health symptoms does not trigger the start of a mental-health limitations period. *Id.* at 608–09. Some of those cases, notably, determined that the insurance company had acted *arbitrarily* in adopting a different interpretation. *See Michaels*, 305 F. App'x at 904 (holding that denial of benefits due to the mere existence of mental impairments fails arbitrary and capricious review); *George*, 776 F.3d at 356 (concluding Reliance abused its discretion in applying a mental-health limitation where physical impairments still left a claimant totally disabled).

Reliance invokes the Social Security Administration's reasons for awarding disability benefits to McEachin. It notes that an administrative law judge deemed depression and anxiety to be components of McEachin's disability. But that does not answer the question whether physical limitations alone created the "total" disability. Social Security benefits operate differently anyway. They do not contain similar on-off switches if the individual's physical limitations improve but her mental-health limitations do not. Rather, the Administration provides that when "determining whether an individual's physical or mental impairment[s]" justify benefits, what matters is "the combined effect of all of the individual's impairments . . . without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B).

Reliance claims that an unpublished case, *Eastin v. Reliance Standard Life Insurance*, No. 13-6247, 2014 WL 3397141, at *3 (6th Cir. July 10, 2014), undermines our approach.  But that case differs in material ways from this one.  There, it is true, we affirmed the denial of the insured's claim for additional benefits due to a mental-health cap on the length of benefits.  *Id.* at *3.  But the evidence showed that physical *and* mental impairments combined to establish her total disability from the outset.  *Id.*; *Eastin v. Reliance Standard Life Ins.*, No. 2012–140 (WOB–CJS), 2013 WL 4648736, at *2 (E.D. Ky. Aug. 23, 2013).  Nothing in that record showed that her physical disability alone entitled her to benefits during the 24-month period.  *Eastin*, 2014 WL 3397141, at *2.  In marked contrast, McEachin's record indicates that her physical disability alone prevented her from working until April 2021.

III.

*McEachin's cross-appeal.*    Did the district court correctly determine that McEachin's physical disabilities in April 2021 no longer made her totally disabled?

While we do not give deference to the plan administrator's factual findings in this context, the same may not be true of the district court's findings.  *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 889–90 (6th Cir. 2020).  In some instances, we have looked for clear error by the district court. *See Moore v. Lafayette Life Ins.*, 458 F.3d 416, 438 (6th Cir. 2006).  In others, we have looked anew at the court's findings.  *See Hoover v. Provident Life & Acc. Ins.*, 290 F.3d 801, 808–09 (6th Cir. 2002); *Tranbarger v. Lincoln Life & Annuity Co.*, 68 F.4th 311, 318 (6th Cir. 2023) (Nalbandian, J., concurring) (arguing that our case law requires fresh review of district-court factfinding).  We need not resolve the point today because we would reach the same conclusion either way.

McEachin makes two distinct arguments on this front.  One is that her post-April 2021 medical evidence undermines the district court's conclusion that her total disability at that point turned on mental-health challenges.  The other is that, even if she was not physically disabled on April 1, 2021, she was allowed to toll the 24-month clock based on later evidence presented during that two-year window.  We address each argument in turn.

*Disability status as of April 1, 2021.* We reject McEachin's first argument. She did not prove that her physical conditions prevented her from working in a sedentary job with restrictions as of April 2021. The record indicates that her physical conditions significantly improved before then. The frequency and severity of her migraines declined, physical therapy helped McEachin regain "full strength" to her extremities, and MRI and x-ray scans displayed positive results. R.9 at 534. After her second surgery, McEachin told a doctor that she felt "so much better," and she could walk without a limp. R.9-2 at 565. As a file reviewer put it, McEachin had the "capacity to work on a full-time consistent basis" by April 2021 with several "appropriate restrictions and limitations." R.9 at 535; R.9-5 at 513. While McEachin had to avoid "[w]alking and standing" more than "2 hours out of an 8-hour workday," she "would not be precluded from her own occupation." R.9 at 535–36. By April 2021, McEachin had returned to many physical activities, including a rafting trip a few months earlier.

All of this remains true despite McEachin's then-upcoming surgery in October 2021. As the record shows, McEachin did "not require emergent surgery," and "functioning at the sedentary level would not increase the risk of further injury," meaning that she could work at the very least until the operation. R.9 at 537. Future medical treatments, as a general rule, do not address "the critical issue of whether [McEachin] could work during that period." *Tranbarger*, 68 F.4th at 315.

McEachin counters that the district court should have considered her physical condition after the April 2021 denial of benefits to justify delaying the beginning of the 24-month clock for mental-health disabilities. But a claimant may present later evidence of poor health only to show her earlier condition. *Likas v. Life Ins. Co. of N. Am.*, 347 F. App'x 162, 167 (6th Cir. 2009); *Javery v. Lucent Techs., Inc. Long Term Disability Plan*, 741 F.3d 686, 690 n.1 (6th Cir. 2014). That is not how McEachin initially uses this evidence. She points to an August report from her orthopedic surgeon, Dr. Peter Bono, that never purports to show her physical disability as of April 1, 2021. Neither that evidence nor any other evidence shows that she was totally disabled due to physical limitations at that point.

*Disability status from April 1, 2021 to April 1, 2023.* McEachin separately argues that, at a minimum, the district court should have permitted her to use this medical evidence to toll the

24-month mental-disability clock *after* April 1, 2021. Even if that evidence could not be used retroactively to establish her disability status on April 1, 2021, she maintains, it could be used to show that the mental-disability clock should not have run for certain months during the two-year period. It's fair to say that McEachin did not clearly raise this argument below—and as a result the district court can be forgiven for not seeing it. No district court ruling in fact exists on the point. But McEachin does make this argument on appeal, and Reliance has not raised a forfeiture contention. *See United States v. Shultz,* 733 F.3d 616, 619 (6th Cir. 2013) (noting that the party "forfeited the forfeiture").

The district court should look at this point in the first instance. In doing so, it is worth noting that the policy requires disability benefits for as long as the insured has a "total disability." Recall that McEachin remained totally disabled after April 1, 2021. The 24-month clock started at that point because her physical limitations no longer caused or contributed to the disability. Only her mental-health problems created the total disability. But nothing in the policy prohibits applicants from showing physical disabilities create a total disability at any point that the total disability exists. That suggests that McEachin may use her post-April 2021 evidence for a distinct reason—to show that the 24-month clock should have been tolled at certain points between April 2021 and April 2023, and that her eligibility for benefits thus may go beyond April 2023. On remand, the district court should consider this argument and the application of it to the existing medical evidence in the record.

IV.

For these reasons, we vacate in part, affirm in part, and remand the case to the district court.